### HILL *v.* SCOTLAND Co.[1]

### MELLEN *v.* SAME.

### FIRST NAT. BANK OF WARSAW *v.* SAME.

*(Circuit Court, E. D. Missouri.* October 14, 1885.)

#### COUNTY BONDS—NEGOTIABLE INSTRUMENTS—NOTICE.

Where negotiable county bonds authorized to be issued and delivered to A., upon the performance by A. of a condition precedent, were unlawfully issued, duly signed and sealed by the presiding justice of the county court and the county clerk, to B., as trustee, and were unlawfully delivered by B. before the performance of said condition in order to avoid the effect of a suit then about to be brought, and which was thereafter brought, against him to restrain the delivery of the bonds, and have them declared void; and where said bonds were placed upon the market and sold: *held,* (1) that they could not be enforced against the county by an original purchaser with notice either of their infirmity or of said suit, or of their delivery in anticipation of said suit; (2) that they could be enforced by purchasers for value and without notice even where purchased from a party who had purchased with notice; (3) that after passing through the hands of one or more innocent purchasers for value, and without notice, they could be enforced by a subsequent purchaser for value with notice.

At Law.

Suits upon coupons detached from bonds of Scotland county, Missouri. The answer states that the bonds to which the coupons in suit were originally attached were authorized to be issued to the Missouri, Iowa & Nebraska Railway Company conditionally; that the condition has never been complied with; and that they were unlawfully issued by the presiding justice of the county court and the clerk of said county to one Mety, as trustee, and were by him unlawfully delivered to said company. The case was tried by a jury. The defendant asked the court to give the following among other instructions, viz.:

"The court declares the law to be that, under the pleadings herein, plaintiff cannot recover upon any coupon declared upon in the second count of his petition, unless he has first established affirmatively to the satisfaction of the jury that such coupon was the act and deed of Scotland county, Missouri. It is not sufficient that plaintiff may have shown that the signatures of the persons purporting to have executed the several bonds are those of the presiding judge of the county court of Scotland county, and of the clerk of said court, and that said bonds are sealed with the seal of said county court. It is incumbent upon plaintiff further to show that the county court, by an order upon its records made, empowered said persons to execute said bonds; that the county court of Scotland county aforesaid had authority to make such order; and that the coupons aforesaid were detached from said bonds of the county court aforesaid. Plaintiff has nevertheless failed to offer competent evidence of such fact, and the jury must find for the defendant."

The court refused to charge as requested, and charged the jury as follows:

*Baker & Hughes* and *Hough, Overall & Judson,* for plaintiffs.

---

[1] Reported by Benj. F. Rex, Esq., of the St. Louis bar.

*H. A. Cunningham* for defendant.

TREAT, J., (*charging jury*.)    There are three cases submitted to you, and they depend essentially upon the same propositions of law.    The court has reduced to writing the views which must control these cases. The court declares the law to be that the plaintiff in each case is entitled to recover on all such obligations sued on, respectively, as he has proved were executed and delivered in manner and form as stated; that is, duly signed by Dawson, the presiding justice of the county court of Scotland county, and Sterling McDonald, clerk of said county, and counter-signed by Charles Mety, under said seal of said county.

Concerning the signatures there seems to be no dispute.    There are some questions of law connected therewith which have been presented, as to which you need not be troubled.    Exceptions have been saved by counsel.    But the court instructs you that these bonds purport to be signed by Dawson, the presiding justice, by Sterling McDonald, the clerk, and counter-signed by Charles Mety.    I suppose there is, as to said signatures, no dispute as a matter of fact.    Now, producing those bonds, which are negotiable in their character, together with the coupons attached, the plaintiffs, respectively, will be entitled to recover, unless it has been proved that the plaintiff, and each of the persons through whom he derived title to said obligations, had actual notice of the pendency of the suit of *Wagner* v. *Meety,* 69 Mo. 150, the record of which has been introduced in evidence.

You understand, gentlemen, that there was a suit instituted by Levi J. Wagner and others to test the validity of these bonds, with a view of determining whether they were valid or invalid.    The result of that suit was in favor of the county, to-wit, that the bonds were void and should be delivered up to be canceled; but those bonds that were in the hands of *bona fide* holders for value, they knowing nothing about the suit or invalidity of the bonds, would not be concluded thereby; hence, under the rules of law governing negotiable paper of this character, though a party may know of the infirmity of the paper, if he derives title thereto through a person who knows nothing about it, he holds the paper as if valid; in other words, if this were not so, and either of you receives negotiable paper through an innocent party, and that paper is found invalid afterwards, as between the original parties, you might go back on the innocent party to reimburse you, and thus, through the ordinary course of transfers, suits might run indefinitely through a series of transactions; but to give sanctity to commercial paper, the law is that if one innocent party, in the course of the transaction, holds the paper for value, all behind him stand in his shoes, and are as if equally innocent parties.    I have gone a step further than the ruling which was specifically before the supreme court.    I say that this paper is valid in the hands of a party who received it for value, without actual notice of the pendency of the suit of Wagner and others; but if he and each intermediate party from the first delivery of these bonds and coupons also had notice of such

suit or other infirmity, then no recovery can be had. Actual notice that the bonds and warrants were delivered by said Mety for the purpose of avoiding a proceeding in equity for the cancellation of said bonds and coupons, which contemplated proceeding was known to said Mety to be about to be instituted, and which was soon thereafter instituted, the same being the case above mentioned, would, if said actual notice existed, as to the plaintiff and each intermediate party, prevent plaintiff's recovery herein. By that is meant simply this: that if actual notice existed, so far as all the intermediate parties were concerned in the transfer of this paper from one to the other, of the actual pendency of that suit, or of a contrivance by Mety, through this indemnity bond, to escape the injunction, the same rule obtains. If the obligations sued on were duly executed as above mentioned, and delivered by said Mety, and were thereafter purchased for value by the plaintiff from persons who had acquired the same for value without notice of said suit, or of any fraud in the execution and delivery of the same as above stated, then as to such obligations the plaintiff is entitled to recover. On the other hand, if the plaintiff, and each of the persons through whom he derived title, had actual notice of said Wagner suit, or of the delivery of said obligations by Mety to escape said suit, known to be about to be instituted, then, as to such of said obligations, there can be no recovery.

In other words, in order to defeat the plaintiffs' rights in this case, it is necessary to trace from the original delivery by Mety of those bonds, through all the various parties in the course of the transfers, an actual notice of that pending suit, or of the fraud mentioned; and in the light of the testimony it seems that there is no need of going any further. One link broken in the chain breaks the chain.

*Mr. Cunningham.* I desire to be understood as formally repeating the exceptions which I have heretofore made.

*The Court.* That is understood. I will only state, in order that the jury may understand this, in a condensed form, that where negotiable paper is put upon the open market, and a purchaser knows nothing of its infirmity, and pays value for it, although the person from whom he purchases knew there was an infirmity in the paper, yet he is not charged with notice of what others knew, and if that paper passes through the hands of one or more innocent parties, and finally comes back to him, and he doubts the validity or infirmity of the paper, he is protected by the innocent parties who stand behind him. That is all that means. Otherwise negotiable paper would be set afloat in the community which might be valueless; so that nothing remains for you but to find a verdict for the plaintiff for the sum stated, unless actual notice, as stated, is traced through all the transferees of the paper. This raises a very important question for the supreme court of the United States to pass upon, in the light of its recent decision, in the principal case.